**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| JENNIFER O'NEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-CV-225 NAB |
| ) | |
| KILOLO KIJAKAZI[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jennifer O'Neal's appeal regarding the denial of disability insurance benefits under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand this action.

**I.    Issues for Review**

O'Neal presents three issues for review. She asserts that the administrative law judge ("ALJ") (1) failed to afford more weight to O'Neal's treating physician; (2) failed to properly evaluate O'Neal's complaints of pain; and (3) failed to properly evaluate residual functional

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

capacity. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**III. Discussion**

    **A.    ALJ's Decision**

O'Neal filed her application for disability insurance benefits due with an alleged onset date of December 11, 2014. (Tr. 10.) She asserted disability due to chronic migraines, vision problems, depression, heart problems, and chronic sinusitis. (Tr. 69.) After her claim was denied at the initial level, O'Neal requested and received an administrative hearing before an ALJ. (Tr. 89-90.) She also amended her alleged onset date of disability to March 17, 2017, in view of substantial gainful activity preparing taxes until 2017, after the original alleged disability onset date. (Tr. 10.)

The ALJ found that O'Neal met the insured status requirements of the Social Security Act through September 30, 2019, and that she had not engaged in substantial gainful activity since March 17, 2017, the amended alleged onset date. (Tr. 12-13.) Next, the ALJ found that O'Neal has the following severe impairments: gout, migraine headaches, and complex regional pain syndrome. (Tr. 13.) The ALJ found O'Neal's obesity and depression were non-severe impairments. (Tr. 13-14.)

The ALJ determined that O'Neal did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that O'Neal had the residual functional capacity to perform sedentary work, except for the following limitations:

> The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. The claimant can also occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have no exposure to dangerous unprotected heights or dangerous unprotected moving machinery. Additionally, the claimant can have no exposure to extreme cold, heat, or humidity, thus she can work in an environment equivalent to a typical office or retail setting in terms of humidity and temperature control. Furthermore, the maximum environment noise level is limited to that as defined in the Dictionary of Occupational Titles/SCO as moderate code 3. She can have no exposure to whole body vibration.

(Tr. 14-15.) Based on the foregoing, the ALJ found that O'Neal was capable of performing her past relevant work as a tax preparer. (Tr. 17.) Alternatively, the ALJ found there are jobs that exist in significant numbers in the national economy that O'Neal can perform. Therefore, the ALJ ultimately concluded that O'Neal was not under a disability, as defined by the Social Security Act, from March 17, 2017 through February 26, 2019.

### B. Weight of Treating Physician Opinion

O'Neal first argues that the ALJ erred by affording little weight to the treating source statement of Dr. Paul Moniz, O'Neal's treating physician.

On September 28, 2018, Dr. Moniz completed a "Physical Residual Functional Capacity Questionnaire" for O'Neal. (Tr. 715-718.) Dr. Moniz stated that O'Neal's diagnoses were "chronic migraines, chronic pain (fibromyalgia working diagnosis)." Under emotional factors or psychological conditions that affect her symptoms and physical condition, he noted that she is chronically depressed and has anxiety. He opined that her pain and other symptoms would "constantly" interfere with attention and concentration needed to perform even simple work tasks. He opined that she was incapable of even low stress jobs, noting that she "has given up on work related activities cannot handle lighting/sounds." He opined that in order to control O'Neal's symptoms, it would be necessary for her to frequently change positions to alleviate discomfort and pain, and she can only sit, stand, or walk less than two hours in an eight-hour workday. He opined that she can only sit for 15 minutes at one time before needing to get up, and she can only stand 15 minutes at one time before needing to sit or walk around. He opined that O'Neal would need to take a break every 15-30 minutes in an eight-hour workday, her legs should be elevated at 60 degrees for 80 percent of an eight-hour workday. He opined that O'Neal could occasionally lift and carry less than 10 pounds; could rarely lift or carry 10 or 20 pounds, and could never lift and carry up to 50 pounds. He opined that she could frequently look down, turn her head to the right or left or look up, and could occasionally hold her head in a static position. He also opined that O'Neal could never stoop, crouch, squat, or climb ladders; could rarely twist; and could occasionally climb stairs. He opined that she has unlimited ability to reach, but limited ability with handling or fingering, as her fingers and toes go numb. He opined she was likely to be absent from work more than four days a month, and that her symptoms and limitations described in the questionnaire have existed since 2010, with significant progression. Dr. Moniz wrote at the end near his signature that "form [was] completed **with** patient." (Tr. 718 (emphasis in original)).

5

Under the regulations applicable to O'Neal's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[2] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff*, 421 F.3d at 790 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). "When an

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

6

ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007)). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

As a preliminary matter, the Court notes that although the ALJ stated that he was giving "little weight" to Dr. Moniz's opinion, the ALJ partially accounted for Dr. Moniz's opinion that O'Neal had significant limitations in the ability to stand, walk, lift, and carry by limiting O'Neal to sedentary work. (Tr. 14.) Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). As the Eighth Circuit has recognized, a limitation to sedentary work "in itself is a significant limitation." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ also imposed additional limitations, finding that O'Neal could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The ALJ further imposed environmental limitations and found that O'Neal could have no exposure to dangerous unprotected heights or moving machinery.

To the extent that the ALJ did discount Dr. Moniz's opinions, the Court find that the ALJ gave good reasons, supported by substantial evidence, that brought the ALJ's decision within the available "zone of choice." First, the ALJ reasonably noted that Dr. Moniz completed the RFC Questionnaire "**with** patient," and the opinions in the form appeared to be based on O'Neal's subjective complaints. The Eighth Circuit has repeatedly found it appropriate for an ALJ to

7

discount a doctor's report where it is based largely on a claimant's subjective complaints. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)). *See also Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).

Second, the ALJ also reasonably found that Dr. Moniz's opinions were inconsistent with his treatment notes. (Tr. 17.) Although Dr. Moniz opined that O'Neal experiences pain or other symptoms severe enough to interfere with attention and concentration "constantly," his office treatment records generally did not report any findings of significant limitations related to her ability to work. Prior to the alleged onset date, his staff occasionally recommended that she rest or "limit activity" generally. Additionally, after the alleged onset date, his office recommended that she rest and not work the remainder of the day during a January 2018 appointment where she presented with sinusitis. (Tr. 638). However, his office also recommended that she increase her physical activity and stop napping during the day. (Tr. 618, 623.) On August 28, 2018, a month before completing the RFC form, Dr. Moniz recommended that O'Neal begin an exercise program. (Tr. 668.) Dr. Moniz's treatment records and recommendations of increasing physical activity are inconsistent with Dr. Moniz's RFC suggesting her symptoms would "constantly" interfere with her attention and concentration, that she cannot even walk one city block without rest or severe pain, and that these limitations have applied since 2010. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *see also Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (discounting treating physician statement opining that claimant could not sit, stand, or walk for more than 20 minutes at a time or one hour total per day where no similar restrictions were included in her treatment records, and the consulting doctor concluded that the applicant could sit, stand, or walk up to six hours per day).

8

Third, the ALJ reasonably noted that Dr. Moniz opined that O'Neal's symptoms and limitations applied since 2010; however, Dr. Moniz did not begin treating O'Neal until 2011, and a 2010 onset is inconsistent with O'Neal's continued work activity. (Tr. 17.) Additionally, the opinion was mostly in checklist format, cites no medical evidence, and provides very little elaboration, with the exception of a few comments that Dr. Moniz wrote down as he filled out the form with O'Neal. "The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value." *Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir. 2001); *Stormo v. Barnhart,* 377 F.3d 801, 805-06 (8th Cir. 2004) ("a treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence").

Moreover, the fact that Dr. Moniz was the only treating source to provide an opinion regarding O'Neal's physical limitations does not mean the ALJ was required to accept it. An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). The ALJ may reject the conclusions of any medical expert if they are unsupported and inconsistent with the record as a whole. *See Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995)).

Upon review of the record, the Court concludes the ALJ properly evaluated Dr. Moniz's medical opinion and provided sufficient explanation for giving his RFC opinions little weight. The Court finds, therefore, that the ALJ's decision to discount the opinion of Dr. Moniz is supported by substantial evidence on the record as a whole.

### C. O'Neal's Subjective Complaints and the RFC Determination

O'Neal contends that the ALJ erred by failing to properly evaluate her subjective complaints of pain, and by creating a conclusory RFC that is not supported by substantial evidence. Because the ALJ assigned little weight to the opinions of Dr. Moniz and Dr. Denise Trowbridge, the state agency medical consultant, and because the ALJ discredited O'Neal's subjective complaints, O'Neal states there is insufficient medical evidence to support the RFC.

### 1. O'Neal's Subjective Complaints

O'Neal contends that the ALJ failed to properly evaluate her subjective complaints of pain. In *Swink v. Saul*, 931 F.3d 765, 770-71 (8th Cir. 2019), the Court discussed an ALJ's duty to evaluate a claimant's subjective complaints of pain with consideration given to objective medical evidence, the claimant's work history, and other evidence relating to the five well known credibility factors:

> (1) The claimant's daily activities;
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
> (3) Any precipitating or aggravating factors;
> (4) The dosage, effectiveness, and side effects of any medication; and
> (5) The claimant's functional restrictions.

The *Swink* Court, however, was clear that an ALJ need not explicitly discuss each factor. "[W]e will defer to credibility determinations that are supported by good reasons and substantial evidence. An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)).

"Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant."

*Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). "Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

In this case, the ALJ found that O'Neal's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. The undersigned finds that the ALJ improperly discounted O'Neal's credibility. O'Neal's complaints of pain and allegations regarding the functional limitations caused by her injuries are not inconsistent with the medical evidence of record. For example, the ALJ stated that for O'Neal's migraines, "she received a permanent stimulator in November 2016 and subsequently reported excellent relief rated at 90%. Although she required some reprogramming for her left sided pain, she still experienced relief." (Tr. 16.) The ALJ seems to infer that after the stimulator was implanted, O'Neal's migraines were less symptomatic or less frequent. However, a review of the entirety of the record related to her stimulator and treatment with Dr. Rupert, the neurologist who recommended the stimulator, reveals that the effectiveness of the stimulator significantly decreased a few months later. O'Neal received the permanent stimulator implant on November 2, 2016. At her two-week follow up appointment, O'Neal reported pain relief rated at 75%, and that she was able to do daily activities such as light chores and family activities. (Tr. 407.) At a January 4, 2017 follow up appointment, O'Neal reported pain relief rated at 95%. (Tr. 405.) However, at the last permanent stimulator appointment in the record, on March 8, 2017, O'Neal reported pain relief at only 25%, as the pain was originally mainly at the right side of her head and had moved to the left side. (Tr. 407.) Additionally, throughout 2017 and 2018, O'Neal continued to report and be evaluated for

migraines that lasted for days at a time. The symptoms were sometimes relieved by pain medication and lying perfectly still. (Tr. 639, 647, 651, 655, 660.) A review of the record also shows that her treatment to stop existing pain and migraines included narcotics, anti-nausea, and NSAID pain oral and injection medications, including Toradol, Phenergan, Ketorolac, Promethazine hydrochloride, Hydrocodone/acetaminophen, and Sumatriptan.

>    Further, the ALJ explained that:
>
>    despite alleging that her headaches have been disabling since December 2014, the claimant was able to engage in work as a tax preparer through 2017. She is also, as previously discussed, able to maintain her real estate license by engaging in continuing education. Thus, despite the alleged severity of her headaches, she was still able to engage in work. This activity coupled with her no more than conservative treatment indicates that the claimant can engage in the sedentary work as assessed with the environmental limitations to prevent aggravation of her symptoms.

(Tr. 16.) The ALJ does not point to evidence in the record to support these propositions, only relying on O'Neal's Function Report alleging disability since December 2014. (Tr. 239.) O'Neal completed this report before she amended her disability onset date to March 17, 2017. In her testimony at the hearing, O'Neal explained that she stopped working as a tax preparer in 2017 because of her health conditions. O'Neal testified that with the brain fog and side effects resulting from her prescribed medications, it was not safe for her to be working on people's finances. (Tr. 41.) The ALJ states that the RFC is supported by O'Neal's activities of daily living, but he seems to only rely on the fact that she worked before her amended alleged onset date, and that she is able to maintain her real estate license. O'Neal testified that she has not *used* her realtor's license since 2015, but is able to keep her license active by taking the fifteen hours of classes every two years, plus an exam that is smaller than the initial real estate exam required to obtain the license. (Tr. 38-39.) The only other daily activity the ALJ cites to is that O'Neal can sometimes watch movies with her children.  Indeed, the only activity included in her Function Report is that "my kids lay in bed

12

with me, sometimes we can watch a movie together." (Tr. 243.) O'Neal also alleges that she spends the majority of her days in bed, has difficulties with dressing, bathing, caring for her hair, and using the toilet. She does not prepare any meals or engage in household duties. (Tr. 15.) To the extent the ALJ relies on the fact that she keeps her real estate license in good standing and watches movies while lying down to show she can engage in work and to discount her credibility, the Court does not find these bases to be compelling. Taking fifteen hours of classwork over the course of two years is not comparable to the performance of full time work as a tax preparer or real estate agent. Aside from O'Neal's work preparing taxes before the amended disability date, the ALJ does not point to daily activities in the record that support the RFC or a finding that her subjective testimony as to her daily activities is inconsistent with the medical evidence or other evidence in the record.

## 2. RFC Determination

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

"A disability claimant has the burden to establish her RFC." *Eichelberger,* 390 F.3d at 591 (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)). However, the ALJ has an

---

[3] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

13

independent duty to develop the record despite the claimant's burden. *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004). "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger,* 390 F.3d at 591 (citing *Dykes v. Apfel,* 223 F.3d 865, 867 (8th Cir. 2000)) (internal quotation marks omitted). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace." *Id.* (quoting *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2003)).

The ALJ found that O'Neal had the RFC to perform sedentary work, except that she cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; can also occasionally balance, stoop, kneel, crouch, and crawl; can have no exposure to dangerous unprotected heights or dangerous unprotected moving machinery; and can have no exposure to extreme cold, heat, or humidity, thus she can work in an environment equivalent to a typical office or retail setting in terms of humidity and temperature control. Furthermore, the maximum environment noise level is limited to that as defined in the Dictionary of Occupational Titles/SCO as moderate code 3; and she can have no exposure to whole body vibration. (Tr. 14-15.)

The only opinion evidence in the record is that of Dr. Moniz and Dr. Trowbridge. As discussed above, the ALJ appropriately gave little weight to Dr. Moniz's opinion. The ALJ also gave little weight to Dr. Trowbridge's opinion. Dr. Trowbridge opined in June 2017 that O'Neal could engage in light work and occasional postural activities with the exception of never climbing ladders, ropes, or scaffolds. (Tr. 75.) She opined that O'Neal should avoid moderate exposures to hazards and avoid concentrated exposure to all other environmental conditions. (Tr. 76.) In assigning little weight, the ALJ reasonably relied on the facts that Dr. Trowbridge did not have the opportunity to examine O'Neal and was unable to review the majority of the record at the time she gave her opinion because there were many records submitted after June 2017. (Tr. 17.)

14

After a review of the evidence in the record as a whole and the arguments briefed by the parties, the Court finds that there is not substantial evidence in the record to support the ALJ's RFC determination and this action should be remanded for further proceedings. While the ALJ's evaluation of Dr. Moniz's opinion may be supported by substantial evidence, the ALJ's RFC determination is not. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same). "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2001)). If the medical record is adequately developed, the ALJ is not required to seek additional information or order a consultative examination. *Hensley*, 829 F.3d at 932 (citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016)).

This case is one where a consultative examination would help in developing a complete RFC. The ALJ has a duty to fully and fairly develop the evidentiary record. *Byes v. Astrue*, 687 F.3d 913, 916-16 (8th Cir. 2012) (citing *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir.2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.")). Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work. *Id.* at 916 (citing *Cox v. Apfel,* 160 F.3d

1203, 1209–10 (8th Cir. 1998)). The RFC includes all of the information in the administrative record, including information regarding a claimant's activities of daily living. The ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). As discussed above, O'Neal's activities of daily living, as described, do not indicate the ability to perform work activities on a regular and continuing basis. This is not a case where the claimant was treated occasionally and took over the counter medication for mild pain. O'Neal's records reflect she regularly was treated for migraines and chronic pain, and regularly received narcotics, injections, and sought more aggressive treatment such as botox injections and the stimulator implant.

Additionally, O'Neal argues that when she is having a migraine she cannot function, needs to lie still in a dark and quiet place, and must either be absent or leave work early. At the hearing, the ALJ stated that "really the gist of this case is going to be absenteeism." (Tr. 62.) In questioning the vocational expert, the ALJ asked how often the hypothetical worker could be absent from work or leave early. The vocational expert responded that based on his professional experience, leaving early constitutes an absence, and even a single absence in a one-month period that occurred over two consecutive months would result in termination, or two or more in a given month would also result in termination. (Tr. 64-65.) Despite acknowledging the importance of absenteeism, the ALJ failed to discuss it in his opinion. The ALJ did not necessarily err in this respect, as it is the claimant's burden to prove her RFC, and here, the only evidence regarding absenteeism is Dr. Moniz's opinion that O'Neal would miss more than four days per month, which was given "little weight." (Tr. 718.) However, given the evidence in the record that supports O'Neal's complaints

16

of disabling pain, and the need to lie down to attempt to relieve the migraines, on remand, it would be appropriate to consider the likelihood of absences or breaks at work related to migraines. *See, e.g., Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998) (where treating physician noted claimant would miss a great deal of work, and medical records detailed injections of Demerol, after which claimant must be driven home by someone else due to effects of the drug, absenteeism should be considered); *Moore v. Colvin,* 743 F.3d 1118, 1127 (7th Cir. 2014) ("[T]he ALJ should have at least included in the RFC determination the likelihood of missing work.").

The ALJ improperly relied on his own inferences of the medical record to form the RFC determination. *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (ALJ erred in relying on his own inferences about what claimant's medical providers' notes meant). In light of the "little weight" assigned to the opinions of Dr. Moniz and Dr. Trowbridge, there is not sufficient evidence in the record to substantiate the limitations contained in the RFC determination. The record does not contain additional medical opinions regarding O'Neal's ability to function in the workplace. The Court will reverse and remand this action so that the ALJ can obtain a consultative examination and make a new RFC and credibility determination.

**IV.     Conclusion**

The Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further

administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief O'Neal seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part.** (Docs. 1, 19.)

**IT IS FURTHER ORDERED** that the Commissioner's decision of February 21, 2019 is **REVERSED** and **REMANDED** for a consultative examination and new residual functional capacity and credibility determinations.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

                                                                      NANNETTE A. BAKER
                                                                      UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of October, 2021.